**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

LAURA LOOMER,

        *Plaintiff*,

  v.

FACEBOOK, INC.,

        *Defendant*.

Case No. 9:19-cv-80893-RS

The Honorable Rodney Smith

**DEFENDANT FACEBOOK, INC.'S MOTION TO TRANSFER PURSUANT TO
28 U.S.C. § 1404(A) AND INCORPORATED MEMORANDUM OF LAW**

GELBER SCHACHTER & GREENBERG
Brian W. Toth
Natalia B. McGinn
1221 Brickell Avenue
Suite 2010
Miami, Florida 33131
Phone: (305) 728-0965
Fax: (305) 728-0951
btoth@gsgpa.com
nmcginn@gsgpa.com

DAVIS WRIGHT TREMAINE LLP
Laura R. Handman*
Alison Schary*
Chelsea T. Kelly*
Suite 800
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
Phone: (202) 973-4224
Fax: (202) 973-4450
laurahandman@dwt.com
alisonschary@dwt.com
chelseakelly@dwt.com

*Counsel for Defendant Facebook, Inc.*
*\*Admitted pro hac vice.*

## I. INTRODUCTION

This lawsuit is Plaintiff Laura Loomer's second attempt to punish Facebook for suspending her accounts after she violated its Community Standards—a decision another federal court has already held was within Facebook's rights. Faced with this defeat, Ms. Loomer filed suit in this Court, arguing Facebook defamed her when it explained the policy pursuant to which it permanently deactivated her account and the accounts of several other individuals on the same day. Not only are Ms. Loomer's claims barred as a matter of law—as Facebook explains in its accompanying motion to dismiss—but this lawsuit was filed in the wrong place. If the Court does not dismiss Ms. Loomer's claims, it should transfer the case to the Northern District of California.

Facebook's Terms of Use, to which Ms. Loomer agreed, state that "any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products . . . will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." As the Supreme Court has held, "a valid forum-selection clause [should be] given controlling weight *in all but the most exceptional cases*." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59, 63 (2013) (emphasis added). There is nothing exceptional here, and no reason to suggest Facebook's forum-selection clause is invalid. In fact, courts (including in this District) have consistently enforced the company's forum-selection clauses. *See Soffin v. Echannel Network, Inc.*, No. 12-81279-CIV, 2014 WL 2938347, at *1 (S.D. Fla. June 30, 2014); *see also infra* at 9 & n.5 (collecting cases).

A transfer is not only required by the forum-selection clause, but proper under a traditional Section 1404(a) analysis. Facebook is headquartered in California. The vast majority of witnesses and evidence are in California. And Ms. Loomer agreed to the application of California law, with which a California court will be more familiar. This case belongs in California.

For these reasons, Facebook respectfully asks the Court to grant its motion to transfer, unless that motion is mooted by an order granting Facebook's motion to dismiss with prejudice.

## II.  BACKGROUND

Facebook operates a social media platform through which users can share messages, photos, videos, and links to content on other websites. Ms. Loomer's claims stem from Facebook's decision on May 2, 2019, to disable her accounts and statements that describe its "Dangerous Individuals and Organizations" policy. *See* Amended Complaint, D.E. 7 ("Am. Compl.") ¶¶ 7-8.

Ms. Loomer first signed up for Facebook on June 21, 2007, when she created a personal profile, which allows a user to interact with friends and share content. Wong Decl. ¶ 3. To create her account, Ms. Loomer was required to click a box next to the statement "I have read and agree to the Terms of Use and Privacy Policy." *See id.* ¶ 6.[1] The words "Terms of Use" were highlighted in blue and hyperlinked to a page displaying the full Terms of Use. *Id.*

On December 9, 2016, Ms. Loomer signed up for another Facebook account, this time to create a public page ("Page"), which allows a public figure, business, or organization to connect with customers or fans and offers tools to help such users or entities manage and track public engagement. *Id.* ¶ 3. To create her Page, Ms. Loomer had to click a button labeled "Get Started," located beneath language stating: "By clicking Get Started, you agree to the Facebook Pages Terms." *Id.* ¶ 8. The words "Facebook Pages Terms" were highlighted in blue and hyperlinked to a page displaying Facebook's Pages Terms, which include the company's guidelines regarding users' activity on Facebook Pages. *Id.* ¶ 9. The first paragraph of the Pages Terms incorporated and hyperlinked to Facebook's Statement of Rights and Responsibilities ("SRR"), which was also

---

[1] A court may consider affidavits when ruling on a 1404(a) transfer motion. *See Soffin*, 2014 WL 2938347, at *1; *see also Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir. 1974).

highlighted in blue. *See id.* ¶ 10. The SRR states that an account holder's "continued use of the Facebook Services, following notice of the changes to our terms, policies or guidelines, constitutes your acceptance of our amended terms, policies or guidelines." *Id.* ¶ 11. At the time Facebook deactivated Ms. Loomer's accounts, the SRR—renamed the Terms of Service ("Terms")—included a forum-selection clause, which states:

> For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

*Id.* ¶ 12, Ex. E § 4.4. "Facebook Products" includes "Facebook and the products, features, apps, services, technologies, and software [it] offer[s]." Ex. E at 1.[2]

The Terms expressly require users to not violate Facebook's Community Standards, which describe what is and is not allowed on Facebook and include the company's Dangerous Individuals and Organizations ("DIO") policy. The DIO policy prohibits individuals or organizations involved in "organized hate" from having a presence on Facebook, and bans "support or praise for groups, leaders, or individuals involved in these activities." Wong Decl. ¶ 15, Ex. F.

---

[2] The Pages Terms to which Ms. Loomer clicked assent contain a clause binding her to future modifications. Wong Decl., Ex. D § 13. Under that clause, the version of the Terms in place the day Facebook deactivated Ms. Loomer's account applies. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119 (11th Cir. 2010) ( "Changes to Agreement" clause in a phone contract enforceable where plaintiff agreed to clause in initial contract and right to modify was dependent on plaintiff's continued use of the service). Moreover, Ms. Loomer assented to a nearly identical forum-selection clause when she created her Page on December 9, 2016. *See* Wong Decl., Ex. D § 15.1 ("You will resolve any claim, cause of action or dispute (claim) . . . arising out of or relating to this Statement or Facebook exclusively in the U.S. District Court for the Northern District of California . . . .").

3

Earlier this year, Facebook temporarily suspended Ms. Loomer's account for violation of the DIO policy, prompting her to file a lawsuit in the District of Columbia, alleging, among other things, that Facebook conspired with other companies to suppress conservative viewpoints. *See Freedom Watch v. Google, Inc.*, Civ. No. 1:18-02030, D.E. 28, ¶¶ 68-69. On March 14, 2019, the court dismissed the claims. *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 34 (D.D.C. 2019), *appeal filed*, No. 19-7030 (D.C. Cir. Apr. 17, 2019).

On May 2, 2019, Facebook permanently deactivated the accounts of Ms. Loomer and several others for violation of the DIO policy.[3] Am. Compl. ¶¶ 5, 27. On May 3, 2019, CNN published an article about the deactivations (*id.* ¶¶ 6-8, hereinafter "the CNN Article"), which quotes a Facebook spokesperson:

> "We've always banned individuals or organizations that promote or engage in violence and hate, regardless of ideology," a Facebook spokesperson said in a statement provided to CNN Business. "The process for evaluating potential violators is extensive and it is what led us to our decision to remove these accounts today."

*Id.* ¶ 6. The CNN Article included another quote from a Facebook spokesperson describing factors that go into the company's decision to designate an individual as violating the DIO policy:

> [S]uch factors include whether the person or organization has ever called for violence against individuals based on race, ethnicity, or national origin; whether the person has been identified with a hateful ideology; whether they use hate speech or slurs in their about section on their social media profiles; and whether they have had pages or groups removed from Facebook for violating hate speech rules.

*Id.* ¶ 8.[4]

---

[3] The Facebook employees who decided Ms. Loomer violated the DIO policy are concentrated in Menlo Park, California, where Facebook is headquartered. Likewise, documents regarding this decision were generated and stored in Menlo Park. *See* Wong Decl. ¶ 5.

[4] A copy of the full CNN Article is attached as Exhibit 7 to the concurrently-filed Motion to Dismiss Pursuant to Rule 12(b)(6).

4

Ms. Loomer filed the operative complaint on August 5, 2019. *See* D.E. 7. She alleges that Facebook defamed her by designating her as a "dangerous individual" and by implying that she "promote[d] or engage[d] in violence and hate," based on Facebook's statements in the CNN Article. Am. Compl. ¶¶ 29-30, 32. She seeks more than $3 billion in damages. *See id.* at 10.

### III. ARGUMENT

When Ms. Loomer signed up for and continued using Facebook, she contractually agreed to bring her lawsuit in the Northern District of California—the place where Facebook is headquartered and where the majority of witnesses and evidence related to this lawsuit are located. This Court should hold Ms. Loomer to her agreement and transfer this case, whether by enforcing the forum-selection clause or under a traditional forum analysis.

#### A. The Court Should Enforce Facebook's Forum-Selection Clause.

A motion to enforce a forum-selection clause and transfer a case is treated as a motion under 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co.*, 571 U.S. at 52; *see also* 28 U.S.C. § 1404(a) (permitting transfer "[f]or the convenience of parties and witnesses, in the interest of justice"). Where there is a valid forum-selection clause, however, courts need not consider the traditional Section 1404(a) factors. *Atl. Marine Constr. Co.*, 571 U.S. at 62-63. The parties' contractual choice "carries near-determinative weight." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014). Under established law, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases" since it "protects [the parties'] legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Constr. Co.*, 571 U.S. at 63 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J. concurring)).

To decide whether a forum-selection clause is enforceable, a court must analyze whether the claims fall within the scope of the clause, whether the clause is valid, and whether it is

5

mandatory or permissive. *See Hindi v. Birdeye, Inc.*, No. 19-cv-61201, 2019 WL 4091425, at *3 (S.D. Fla. Aug. 29, 2019). If the clause is enforceable, "the plaintiff's choice of forum merits no weight" and the plaintiff "bear[s] the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine Constr. Co.*, 571 U.S. at 64*; see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (party seeking to avoid a forum-selection clause bears a "heavy burden of proof"). In other words, "a district court should transfer the case unless *extraordinary circumstances unrelated to the convenience of the parties* clearly disfavor a transfer." *Atl. Marine Constr. Co.*, 571 U.S. at 52 (emphasis added).

Applying these principles here, the Court should enforce Facebook's forum-selection clause and transfer this case to the Northern District of California.

### 1. Facebook's forum-selection clause is enforceable.

The Court should enforce Facebook's forum-selection clause because (1) Ms. Loomer's claims fall within the scope of the clause; (2) the clause is mandatory; and (3) the clause is valid.

First, Ms. Loomer's claims all "arise[] out of or relate[] to" the Terms or Facebook Products. Wong Decl. ¶ 12, Ex. E § 4.4. Ms. Loomer alleges Facebook unlawfully deemed her a "dangerous individual" who violated its DIO policy, and disabled her Facebook accounts based on that finding. Am. Compl. ¶¶ 7-8 (alleging account deactivation publicly designated her as "dangerous"); ¶ 27 (describing Facebook Civil Rights Audit, which cites Ms. Loomer as an example of DIO policy violation). *See also* Wong Decl. ¶ 10 (Terms require users to not violate the Community Standards); *id.* ¶ 14 (Community Standards include DIO policy). Ms. Loomer also alleges Facebook implied she "promote[s] or engage[s] in violence and hate," in a statement to CNN. Am. Compl. ¶ 6. All of these statements concern Facebook's reasons for deactivating accounts under its DIO policy, including Ms. Loomer's accounts—reasons that are rooted in the

Terms. All of them therefore "arise from" or "relate to" the Terms or Facebook Products. *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 844 (S.D.N.Y. 2012) (enforcing Facebook's forum-selection clause where plaintiff claimed account removal was product of religious and ethnic discrimination); *Kruchoski v. MiMedx Grp., Inc.*, No. 1:17-CV-00577, 2017 WL 3433697, at *6 (N.D. Ga. June 13, 2017) (defamation claim premised on defendant's statement that plaintiff breached his agreement fell within agreement's forum-selection clause, since "the Court will necessarily have to interpret and analyze the [a]greement" to decide whether there was a breach).

Second, Facebook's forum-selection clause is mandatory. A mandatory forum-selection clause "dictates an exclusive forum for litigation under the contract," while a permissive clause "authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere." *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir.1999)). Facebook's forum-selection clause states that the user "will" resolve any claim arising from or relating to the Terms or Facebook Products "exclusively" in the Northern District of California. *See* Wong Decl. ¶ 12. Use of the term "exclusively" and nondiscretionary verbs like "will" are "the hallmark of a mandatory forum selection clause." *Trafalgar Capital Specialized Inv. Fund v. Hartman*, 878 F. Supp. 2d 1274, 1283-84 (S.D. Fla. 2012) (forum-selection clause stating that litigation "shall be brought and maintained exclusively in the federal courts of the State of Florida" is mandatory). Accordingly, at least one court has found the language in a prior version of Facebook's forum-selection clause—which is nearly identical to the clause in the current Terms—mandatory. *See E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 901 (S.D. Ill. 2012) ("Because the clause makes venue compulsory and exclusive in state or federal court in Santa Clara County, it is mandatory.").

7

Third, Facebook's forum-selection clause is valid and enforceable. Such clauses are "presumptively valid and enforceable" in this Circuit absent a "strong showing" that "enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam); *see also Sabino v. Kerzner Int'l Bahamas Ltd.*, No. 12-22715-CIV, 2014 WL 7474763, at *2 (S.D. Fla. Jan. 10, 2014). This happens where "(1) [the clause's] formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281. None of these circumstances are present here.

Facebook's forum-selection clause was not induced by fraud or overreaching. To the contrary, it was "reasonably communicated to the consumer." *Cleveland v. Kerzner Int'l Resorts, Inc.*, 657 F. App'x 924, 926 (11th Cir. 2016). When Ms. Loomer created her user account in 2007, she was required to click a box confirming that "I have read and agree to the Terms of Use and Privacy Policy." *See* Wong Decl. ¶ 6. The words "Terms of Use" on the sign-up page were in blue font and hyperlinked to a page displaying the full Terms of Use. *Id.* Ms. Loomer agreed to the Terms again when she created her Page in 2016. To create her Page, Ms. Loomer was required to click a button titled "Get Started" located beneath language stating: "By clicking Get Started, you agree to the Facebook Pages Terms." *Id*. ¶ 8. The words "Facebook Pages Terms" were in blue font and hyperlinked to a page displaying Facebook's Pages Terms, the first paragraph of which incorporated and hyperlinked in blue font to Facebook's Statement of Rights and Responsibilities ("SRR"), which contains the forum-selection clause. *Id.* ¶¶ 9-10, 12.

Forum-selection clauses in so-called "clickwrap agreements" are "valid and enforceable." *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (enforcing forum-

8

selection clause in terms accepted by plaintiffs as a condition of creating Amazon account); *see also Davis v. Avvo, Inc.*, No. 8:10-cv-2352, 2011 WL 4063282, at *2-3 (M.D. Fla. Sept. 13, 2011) (enforcing forum-selection clause where plaintiff clicked a button indicating he accepted and read the Terms of Use to register as a new user). Accordingly, every federal court to consider the question has found Facebook's forum-selection clause valid and enforceable. *See, e.g.*, *Soffin*, 2014 WL 2938347, at *1 (transferring case to Northern District of California, noting "by virtue of having Facebook accounts," two of the plaintiffs had "agreed to be bound by Facebook's Terms of Service"); *Miller v. Facebook, Inc.*, No. 1:09-CV-2810, 2010 WL 9525523, at *4 (N.D. Ga. Jan. 15, 2010) (granting transfer); *Franklin v. Facebook, Inc.*, No. 1:15-CV-00655, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015) (same).[5]

Nor can Ms. Loomer establish that she would be "deprived of her day in court" if the Court transfers this case to the Northern District of California. "[T]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause. . . . A plaintiff must show that litigating in the contractual forum will be so gravely difficult and inconvenient that [s]he will for all practical purposes be *deprived of [her] day in court.*" *Rucker v. Oasis Legal Finance, L.L.C.*, 632 F.3d 1231, 1237 (11th Cir. 2011) (citations and internal quotation marks omitted). Ms. Loomer cannot make this showing. In fact, she recently sued Facebook in the District of Columbia, and is appealing dismissal of that case to the D.C. Circuit—demonstrating that she is able to participate in litigation

---

[5] *See also, e.g.*, *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1159-60 (D. Haw. 2018) (granting motion to transfer to Northern District of California); *Fteja*, 841 F. Supp. 2d at 835 (same); *E.K.D. ex rel. Dawes*, 885 F. Supp. 2d at 897 (same); *Thomas v. Facebook, Inc.*, No. 1:18-cv-00856, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (granting motion to transfer and noting that "the Court is not aware of any case concluding that the forum selection clause in Facebook's [Terms] is invalid").

outside her home state. *See Freedom Watch, Inc.*, 368 F. Supp. 3d at 34. Ms. Loomer also regularly travels around the country—including to California—for political purposes. In recent months, Ms. Loomer posted video on her personal website showing her "protest[ing] open borders on [Speaker] Nancy Pelosi's front lawn" in Napa, California; getting arrested on the grounds of the California Governor's Mansion; and "storm[ing]" Facebook's headquarters in Menlo Park, California.[6]

Finally, Ms. Loomer cannot establish that California law would deprive her of a remedy or contravene public policy. Like Florida, California recognizes the tort of defamation. Further, public policy *favors* enforcement of Facebook's clause: "If this court were to determine that the forum selection clause contained in Facebook's [terms] was unenforceable, the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of Facebook's social-networking site and for other internet companies." *Miller*, 2010 WL 9525523, at *1; *see also Atl. Marine Constr. Co.*, 571 U.S. at 66 ("[C]ourts should not unnecessarily disrupt the parties' settled expectations. . . . In all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain.").

Accordingly, Facebook's forum-selection clause is valid and enforceable.

### 2. No extraordinary circumstances justify disregarding Facebook's valid forum-selection clause.

Once it decides a forum-selection clause is valid, a district court should enforce the clause

---

[6]*See* https://lauraloomer.us/2019/01/14/live-laura-loomer-protests-open-borders-on-nancy-pelosis-front-lawn/#.XVxlUuhKjyQ (attached as Ex. 1); https://lauraloomer.us/2019/01/30/laura-loomer-seeks-sanctuary-at-gavin-newsoms-governor-mansion-in-ca-gets-arrested/#.XVxkyehKjyQ (attached as Ex. 2); https://lauraloomer.us/2019/05/05/laura-loomer-storms-facebook-asks-why-she-was-banned/#.XVxlSehKjyQ (attached as Ex. 3). The Court may take judicial notice of these published articles from Ms. Loomer's website, which website she cites in her Amended Complaint. *See* Am. Compl. ¶ 20 n.4. *See also* Fed. R. Civ. P. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

10

"unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Constr. Co.*, 571 U.S. at 52. Because courts "must deem . . . private-interest factors to weigh entirely in favor of the preselected forum," these "extraordinary circumstances" may relate only to the "public-interest" factors under Section 1404(a), such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62-64 & n.6; *see also Margolis v. Warner Chilcott (US), LLC*, No. 16-23891-Civ, 2017 WL 9324774, at *6 (S.D. Fla. June 14, 2017). Since these factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co.*, 571 U.S. at 64.

None of the public-interest factors favor keeping this case in Florida. This Court and others routinely transfer cases to the Northern District of California based on Facebook's forum-selection clause. *Supra* at 9 and note 5 (collecting cases); *see also, e.g.*, *Hindi*, 2019 WL 4091425, at *9 (enforcing clause, finding "California is an adequate and available alternative forum and the public-interest factors weigh in favor of this pre-selected forum"). There is no local interest in resolving this case in Florida. To the contrary, the case has far greater ties to California—where most of the relevant documents and witnesses are located. And regardless of where this case is litigated, California law will apply, as the Terms require. The interests of "having the trial of a diversity case in a forum that is at home with the law that must govern the action [and] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law" favors a transfer to California. *Margolis*, 2017 WL 9324774, at *6. And "[w]hile this Court is capable of construing [California] law, federal courts in [California] engage in that exercise with far greater frequency and, thus, can fairly be expected to have developed some expertise in that area." *Food*

11

*Mktg. Consultants, Inc. v. Sesame Workshop*, No. 09-61776-CIV, 2010 WL 1571206, at *10 (S.D. Fla. Mar. 26, 2010), *R. & R. adopted*, No. 09-61776-CIV, 2010 WL 1571210 (S.D. Fla. Apr. 20, 2010). "In sum, there is no indication that this is one of the 'unusual cases' in which the public factors outweigh a valid forum-selection clause." *Oribe Hair Care, LLC v. Canales*, No. 17-cv-20148, 2017 WL 2059582, at *5 (S.D. Fla. May 15, 2017) (citing *Atl. Marine Constr. Co.*, 571 U.S. at 64).

### B. Transfer Is Also Proper Under the Traditional Section 1404(a) Analysis.

Even if there was no forum-selection clause, the traditional Section 1404(a) factors would still favor transfer. To apply those factors, courts follow a two-step process. *See Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016). First, the court determines whether the action could have been pursued in the venue to which transfer is sought. *See Osgood v. Discount Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013). Second, the court assesses "whether convenience and the interest of justice require transfer to the requested forum." *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985).

There can be no question Ms. Loomer could have brought her case in the Northern District of California. Further, convenience and the interests of justice favor transfer to that district. California law will govern this case, and the vast majority of witnesses and documents are in California, not Florida, making trial more efficient there. *See* Wong. Decl. ¶¶ 5, 12. Further, transfer would serve the interests of justice because of the parties' agreement to litigate in northern California. *See MSPA Claims 1, LLC v. Halifax Health, Inc.*, No. 17-20706-CIV, 2017 WL 7803813, at *7 (S.D. Fla. Oct. 13, 2017). Nor would California be too inconvenient for Ms. Loomer, as she has demonstrated her ability to travel and litigate outside Florida. *See England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) (describing traditional factors).

Ms. Loomer's choice of forum is "entitled to less consideration" where, as here, "the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff." *Carucel Invs., L.P.*, 157 F. Supp. 3d at 1225.

Because, on balance, the Section 1404(a) factors favor transfer, the Court should transfer this case to the Northern District of California—even if it does not do so on the basis of Facebook's forum-selection clause.

## IV.   CONCLUSION

For these reasons, Facebook respectfully asks the Court to grant its motion to transfer this case to the Northern District of California.

## RULE 7.1(a)(3) CERTIFICATION

The undersigned counsel hereby certifies that it has conferred with Ms. Loomer's counsel in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

## REQUEST FOR A HEARING

In accordance with Local Rule 7.1(b)(2), Facebook requests a hearing focused on the legal issues raised by this motion.

Dated:  September 16, 2019

        s/Brian W. Toth
GELBER SCHACHTER & GREENBERG, P.A.
Brian W. Toth
Florida Bar No. 57708
Natalia B. McGinn
Florida Bar No. 1011385
1221 Brickell Avenue, Suite 2010
Miami, Florida 33131
Phone: (305) 728-0965
btoth@gsgpa.com
nmcginn@gsgpa.com

DAVIS WRIGHT TREMAINE LLP

Laura R. Handman*
Alison Schary*
Chelsea T. Kelly*
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC 20006
Phone: (202) 973-4224
laurahandman@dwt.com
alisonschary@dwt.com
chelseakelly@dwt.com

*Admitted pro hac vice*

*Counsel for Defendant Facebook, Inc.*
