THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-80893-CIV-SMITH

LAURA LOOMER,

        Plaintiff,

v.                                                          **ORAL ARGUMENT REQUESTED**

FACEBOOK, INC.,

        Defendant.
_____/

## OPPOSITION TO MOTION TO DISMISS

Plaintiff Laura Loomer hereby submits the following in opposition to Defendant Facebook, Inc.'s ("Facebook") Motion to Dismiss.

Dated: October 15, 2019

Respectfully Submitted,

s/ Larry Klayman

Larry Klayman, Esq.
KLAYMAN LAW GROUP P.A.
7050 W. Palmetto Park Rd #15-287
Boca Raton FL 33433
Tel: (561) 558-5536
Email: leklayman@gmail.com

## INTRODUCTION

Plaintiff Laura Loomer ("Plaintiff Loomer") has been severely defamed by Defendant Facebook, Inc. ("Defendant Facebook" or "Facebook"), which has caused an immense amount of damage to Plaintiff Loomer's reputation both as an investigative journalist, as well as personally.

First and foremost, Defendant Facebook has falsely and maliciously, and without any basis to do so, designated Plaintiff Loomer as a "dangerous" individual in the course of banning her from its platform. This is, in and of itself, defamatory, as set forth below. However, the malicious defamation did not stop there, as Defendant Facebook then published to the world its criteria for designating an individual as "dangerous," further defaming Plaintiff Loomer by creating the patently false implication that she had been involved in "Terrorist activity, Organized hate, Mass or serial murder, Human trafficking, [or] Organized violence or criminal activity," Am. Comp. ¶ 9, among other detestable activities.

To make matters even worse, and severely compounding the damages to Plaintiff Loomer, in an update to Facebook's Community Standards, Defendant Facebook encouraged its users to make threats of violence and death against those that it categorized as "dangerous," including Plaintiff Loomer:

> The update stated: Do not post: Threats that could lead to death (and other forms of high-severity violence) of any target(s), where threat is defined as any of the following: Statements of intent to commit high-severity violence Calls for high-severity violence (**unless the target is an organisation or individual covered in the Dangerous Individuals and Organisations Policy**)… Including content where no target is specified but a symbol represents the target and/or includes a visual of an armament to represent violence Statements advocating for high-severity violence (unless the target is an organisation or individual covered in the Dangerous Individuals and Organisations Policy)… Aspirational or conditional statements to commit high-severity violence (unless the target is an organisation or individual covered in the Dangerous Individuals and Organisations Policy) (emphasis added). Am. Comp. ¶ 21.

1

Tellingly, Facebook's motion to dismiss is devoid of any explanation or argument concerning these calls to violence and death against Plaintiff Loomer, and as such this must be treated as conceded by Facebook.

Instead, Facebook now attempts to conveniently couch its statements as "opinion," now that it suits it for the purposes of this litigation. However, Facebook's malicious and false statements contain objectively verifiable facts that remove them from the realm of opinion and into the realm of fact. Indeed, as just one example, an accusation that an individual is involved in terrorist activity is easily confirmable by a jury. There is clearly no opinion at issue.

Lastly, Defendant Facebook attempts to introduce a litany of extraneous materials that are clearly improper at the motion to dismiss stage, which must be decided on the four corners of Plaintiff Loomer's complaint. These extraneous and irrelevant materials were tactically included by counsel for Facebook in order to try to prejudice Plaintiff Loomer, and as such they must be stricken.

## **LEGAL STANDARD**

A motion to dismiss is designed to test the legal sufficiency of a complaint and not to determine any factual issues. *Dorleus v. Bank of New York*, No. 14-80124-CIV, 2014 WL 1621941, at *2 (S.D. Fla. Apr. 23, 2014); *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164 (1993). All allegations of the complaint must be taken as true and all reasonable inferences drawn therefrom must be construed in favor the non-moving party. *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC,* 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). A motion to dismiss a complaint is not a motion for summary judgment in which the court may rely on facts adduced in other proofs. *Urquilla–Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1053 n. 12 (11th Cir.2015). Instead, a motion to dismiss tests the legal

sufficiency of the complaint. *Dorleus*, No. 14-80124-CIV, 2014 WL 1621941, at *2 (S.D. Fla. Apr. 23, 2014).

A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotations omitted).

Finally, when considering a Rule 12(b)(6) motion, trial courts are generally limited to the four corners of the complaint and may only consider documents incorporated in the complaint— i.e., either documents attached to the complaint or documents which do not allege acts extrinsic to the pleadings. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997) (A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims).

## LEGAL ARGUMENT

### I.   Facebook's Extraneous Allegations Must Be Stricken

"As a general rule, a court is confined to the allegations within the complaint and any documents attached to the pleading when addressing a motion under Rule 12(b)(6)." *Visonic Sys. v. AT&T Dig. Life (In re SIG, Inc.)*, 971 F. Supp. 2d 1178, 1188 (S.D. Fla. 2013). The only exception to this rule, where the Court may consider extraneous material included by defendants in their motion to dismiss, is when "the document must have been referenced by the plaintiff in its complaint, it must be central to the plaintiff's claim, and its contents must not be in dispute." *Id*.

Facebook includes in its motion a plethora of exhibits that are entirely irrelevant, prejudicial, and most importantly, extraneous. The only documents referenced by Plaintiff Loomer in her Complaint are (1) the CNN article, Am. Comp. ¶ 6, (2) Facebook's "Dangerous Individuals and Organizations" guidelines, Am. Comp. ¶ 9, (3) Plaintiff Loomer's tweet about Rep. Ilhan Omar, Comp. ¶ 12 and (4) Facebook's Civil Rights Audit, Am. Comp. ¶ 27. All of the other extraneous materials included by Defendant Facebook, most of which are unverified news articles regarding Plaintiff Loomer's alleged past actions, are not only clearly extraneous, but also irrelevant and included only to attempt to prejudice Plaintiff Loomer. They are clearly not "central" to Plaintiff Loomer's claims in any fashion. As such, these extraneous materials must be stricken.

II.   **Plaintiff Loomer Has Properly Stated Claims For Defamation**

To recover for libel or slander under Florida law, a plaintiff need only demonstrate that "1.) the defendant published a false statement; 2.) about the plaintiff; 3.) to a third party; and 4.) the [plaintiff] suffered damages as a result of the publication." *Thompson v. Orange Lake Country Club, Inc*., 224 F. Supp. 2d 1368, 1376 (M.D. Fla. 2002) (citing V*alencia v. Citibank Int'l*, 728 So.2d 330, 330 (Fla. 3d DCA 1999)). To determine whether a statement is defamatory, it must be considered in the context of the publication. *Smith v. Cuban Am. Nat'l Found*., 731 So.2d 702, 705 (Fla. 3d DCA 1999); *see also Carroll v. The Street.com, Inc*., 2014 U.S. Dist. LEXIS 156499, *29 (S.D. Fla. 2014) (". . . the Court cannot view the defamatory remarks in a vacuum. It must view the [a]rticle as a whole.").

   A.   **Plaintiff Loomer Has Alleged Actionable, False Statements Made by Facebook**

Facebook attempts to now couch its false, defamatory statements as "opinions" in order to try to escape liability. Facebook categorizes its statements as either referring to Plaintiff

Loomer as "dangerous" or as assertions of "bigotry, racism, prejudice, and political extremism." Facebook argues that these types of statements are non-actionable statements of opinion as a matter of law. Even if this were true – it is not – Facebook's false and defamatory statements go far beyond merely suggesting that Plaintiff Loomer is "dangerous" or a "racist." Facebook's own publications and definitions of these terms carry an additional defamatory meaning as well.

First and foremost, however, many courts have held that the terms "racist" and "dangerous" are not non-actionable statements of opinion as a matter of law. For instance, in *Beverly Hills Foodland v. United Food & Commercial Workers Union, Local 655*, 840 F. Supp. 697, 707 (E.D. Mo. 1993), the Court held, "this Court does not agree that the word 'racist', even when used in the context of a labor dispute, is nondefamatory as a matter of law." This is for good reason. The *Beverly Hills Foodland* court reasoned that the term racist has a clear, accepted dictionary definition that could present an issue of fact for a jury to decide – "whether the word 'racist' was used in such a way to convey a false representation of fact." *Id*. Thus, "it then becomes a question for the jury as to whether or not the use of the word 'racist' was defamatory." *Id*. Other courts have taken this principle a step further, holding that falsely calling someone a racist was defamatory *per se*. "In the first instance, Carter's published statements, which depicted the plaintiffs as racists who physically abused and economically exploited their domestic employee, were clearly defamatory per se." *Sheridan v. Carter*, 2008 NY Slip Op 1131, ¶ 3, 48 A.D.3d 444, 446-47, 851 N.Y.S.2d 252, 252 (App. Div.). *See also Herlihy v Metropolitan Museum of Art*, 214 AD2d 250, 261, 633 N.Y.S.2d 106 (1st Dept 1995) (complaint stated cause of action for slander per se where it stated that volunteers made statements that former coordinator was anti-Semitic and was biased in her treatment of Jewish

5

volunteers.); *Morelli v. Wey*, 2016 NY Slip Op 32487(U) (Sup. Ct.) (holding that falsely accusing an individual of being a member of the KKK was defamatory per se).

Furthermore, courts have also held that falsely using the term "dangerous" can be defamatory as well. For instance, in *Hale v. City of Billings*, 986 P.2d 413, the Montana Supreme Court reversed the lower court's granting of summary judgment regarding a defamation claim where the plaintiff appeared on "Yellowstone County's Most Wanted, "where viewers were informed that the plaintiff "may be armed and dangerous." *Id*. at 416. The Supreme Court found, after conducting an analysis under the Supreme Court case *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695 (1990), that:

> In a close paraphrase of the analysis in Milkovich, when the Billings Police and TCI informed the public, essentially, "In our opinion, we think Mark Hale is a most wanted fugitive, who may be armed and dangerous," the statement implied a knowledge of facts far beyond those disclosed which may have reasonably led viewers to conclude that Hale was most wanted, was a fugitive, and was possibly armed and dangerous. *See* Milkovich, 497 U.S. at 18-19, 110 S. Ct. at 2705-06. Such statements of opinion can cause damage, pursuant to § 27-1-802, MCA, and are actionable, under Roots, if they contain a provably false factual connotation or can reasonably be interpreted as stating actual facts about an individual.

In addition, the Kentucky Supreme Court in *Ky. Kingdom Amusement Co. v. Belo Ky., Inc.*, 179 S.W.3d 785 (Ky. 2005) held that a news broadcast falsely claiming that an amusement park's ride was "dangerous" was actionable as well. Thus, even if Defendant Facebook's statements were simply limited to referring to Plaintiff Loomer as "racist" or "dangerous," this would still be a matter of fact to be determined by a jury. However, as set forth below, Defendant Facebook's statements far went far beyond this threshold.

Indeed, Defendant Facebook publicly announced and defined its "dangerous" designation by enumerating the factors that it took into account to make its designation:

6

> … such factors [for designating an individual as "dangerous"] include whether the person or organization has ever called for violence against individuals based on race, ethnicity, or national origin; whether the person has been identified with a hateful ideology; whether they use hate speech or slurs in their about section on their social media profiles; and whether they have had pages or groups removed from Facebook for violating hate speech rules. Comp. ¶ 8.

Each of these "factors" analyze objectively verifiable facts pertaining to the banned individual, which go far beyond the general term "dangerous." By falsely dubbing Plaintiff Loomer as "dangerous," Defendant Facebook has created the false implication[1] that Plaintiff Loomer has engaged in activity falling under one of the "factors" that it has enumerated, which she has not. Am. Comp. ¶ 10. This is not the only place where Facebook went far beyond general statements. "According to Defendant Facebook's own posted Community Standards, 'Dangerous Individuals and Organizations' are defined as 'organizations or individuals involved in the following: Terrorist activity, Organized hate, Mass or serial murder, Human trafficking, [or] Organized violence or criminal activity.'" Am. Comp. ¶ 9. Through its own publications, by labeling Plaintiff Loomer as a "dangerous" individual, Defendant Facebook has created the false implication that Plaintiff Loomer has either engaged in terrorist activity, organized hate, mass or serial murder, human trafficking, or organized crime or criminal activity.

    **B.**    **Plaintiff Loomer Has Pled that Defendant Facebook Acted With Malice**

As an initial matter, Plaintiff Loomer need not plead or prove malice or special damage because malice and the occurrence of damage are both presumed from the nature of defamation per se. *Wolfson v. Kirk*, 273 So.2d 774, 777 (Fla. Dist. Ct. App. 4th Dist. 1973). Nevertheless,

---

[1] Florida law recognizes a claim of defamation by implication. *Jews for Jesus,* 997 So.2d at 1106. "[I]f the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Id*. at 1108.

Plaintiff Loomer h as sufficiently pled and shown both common law and constitutional malice. Indeed, whether Defendant Facebook truth, is a question of fact that cannot properly be resolved on a motion to dismiss. *See, e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) ("actual malice" calls a defendant's state of mind into question . . . and does not readily lend itself to summary disposition").

In *Harte-Hanks Commc'ns., Inc. v. Connaughton*, 491 U.S. 657 (1989), the U.S. Supreme Court expressly recognized that motive is "supportive," probative, and admissible evidence. *Id*. at 666-68. Direct evidence of actual malice is not required. Rather, a "plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence[.]" *Id*. at 668. "[A]ll relevant circumstances surrounding the transaction may be shown . . . including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating . . . ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights . . ." *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) (recognizing plaintiff will "rarely be successful in proving awareness of falsehood from the mouth of the defendant himself"); *see also Hunt v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983) (holding "an inference of actual malice can be drawn when a defendant publishes a defamatory statement that contradicts information known to him, even when the defendant testifies that he believed that the statement was not defamatory and was consistent with the facts within his knowledge").

Here, Facebook had absolutely no basis to allege that Plaintiff Loomer had engaged in "[t]errorist activity, Organized hate, Mass or serial murder, Human trafficking, [or] Organized violence or criminal activity.'" Am. Comp. ¶ 9. This assertion, made through its designation of Plaintiff Loomer as a "dangerous" individual coupled with its own published definition of a "dangerous" individual, was at a bare minimum, thoroughly reckless. Plaintiff Loomer has never

fallen into any of the categories enumerated by Defendant Facebook. Am. Comp. ¶ 10. There is no public record of Plaintiff Loomer committing any of the activities set forth in Facebook's definition. Thus, Plaintiff Loomer has sufficiently pled and show actual malice.

### C. Plaintiff Loomer Has Pled a Claim for Defamation Per Se

"A published statement is libelous per se if: '(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Klayman*, 22 F. Supp. 3d at 1247 (quoting *Richard v. Gray*, 62 So.2d 597, 598 (Fla. 1953)). Published matter is defamatory when its "gist" or "sting" is defamatory. *Greene v. Times Publishing Co.*, 130 So.3d 724, 729-30 (Fla. 3d DCA 2014). A defamatory statement is one "that tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injuries his business or reputation or occupation." *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1109 (Fla. 2008). The statement is defamatory per se when it facially degrades a plaintiff, brings him into ill repute, or causes similar injury with innuendo. *See Mid-Florida Televisions Corp. v. Boyles*, 467 So.2d 282, 283 (Fla. 1985). A statement that is defamatory per se does not require the aid of extrinsic proof. *Id*. "Imputing criminal behavior to an individual is generally considered defamatory per se, and actionable without proof of damages." *Paul v. Davis*, 424 U.S. 693, 697 (1976).

Here, Facebook has alleged that Plaintiff Loomer had engaged in "[t]errorist activity, Organized hate, Mass or serial murder, Human trafficking, [or] Organized violence or criminal activity" through its designation of Plaintiff Loomer as a "dangerous" individual coupled with its own published definition of a "dangerous" individual. These false accusations are clearly

9

defamatory *per se*, as they (1) falsely accuse Plaintiff Loomer of having committed an infamous crime, (2) tend to subject her to hatred, distrust, ridicule, contempt, or disgrace, and (3) tend to injure her in her trade or profession.

As such, damages are presumed in this instance, where Defendant Facebook's statements are *per se* defamatory. However, even regarding statements that are not clearly *per se* defamatory, Plaintiff Loomer has alleged damages. "Plaintiff Loomer has been severely damaged by these false and misleading statements because they damaged Plaintiff Loomer's reputation and good will and severely harmed financially in her profession and business as a conservative investigative journalist, as well as personally." Am. Comp. ¶ 33. Indeed, Ms. Loomer's reputation as a journalist has been severely damaged, given the fact that Facebook has threatened to ban even those associated with Ms. Loomer, which obviously has had a negative impact on Ms. Loomer's ability to conduct her professional affairs as well as her personal ones.

### III. Plaintiff Loomer's Claims Are Not Centered Around The Banning Of Her Facebook Account

Despite Defendant Facebook's false assertions to the contrary, this lawsuit is not centered around Facebook's decision to disable her accounts. This is a complaint for defamation, as Facebook's completely reckless and malicious decision to falsely dub her as "dangerous" and racist and to imply that she had engaged in "[t]errorist activity, Organized hate, Mass or serial murder, Human trafficking, [or] Organized violence or criminal activity.'" Am. Comp. ¶ 9. Thus, First Amendment concerns regarding the decision to deactivate Plaintiff Loomer's accounts are no more than a red herring meant to confuse the issues.

### CONCLUSION

Based on the foregoing, Plaintiff Laura Loomer respectfully requests that this Court deny Defendant Facebook, Inc.'s Motion to Dismiss and allow this matter to proceed forthwith to discovery. Plaintiff Loomer respectfully requests oral argument.

Dated: October 15, 2019

Respectfully Submitted,

s/ Larry Klayman

Larry Klayman, Esq.
KLAYMAN LAW GROUP P.A.
7050 W. Palmetto Park Rd #15-287
Boca Raton FL 33433
Tel: (561) 558-5536
Email: leklayman@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on October 15, 2019.

*/s/ Larry Klayman*
Larry Klayman, Esq.