UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cv-80893-SMITH

LAURA LOOMER,

    Plaintiff,

vs.

FACEBOOK, INC.,

    Defendant.
_____/

## ORDER GRANTING MOTION TO TRANSFER

This cause is before the Court on Defendant Facebook, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [DE 24], Plaintiff's opposition [DE 28], and Defendant's reply [DE 30]. This is a defamation action brought by Plaintiff after Defendant banned her from using its social media platform Facebook. Because this case arises out of or relates to a contract containing a valid forum selection clause, Defendant's Motion to Transfer Venue is granted.

**I.  BACKGROUND**

Plaintiff is a conservative investigative journalist and is also a conservative Jewish female activist. (Am. Compl. [DE 7] ¶¶ 1-2.[1]) Plaintiff maintained a page on Defendant's Facebook platform, where she engaged with fans and promoted her work. (*Id*. at ¶ 4.) On May 2, 2019, Defendant banned Plaintiff, and others, from the Facebook platform. (*Id*. at ¶ 5.) Plaintiff's accounts and pages were deactivated for violation of Defendant's Community Standards (Wong Decl. [DE 24-4] ¶ 4.)

---

[1] For some reason, the Amended Complaint has two sets of paragraphs numbered 1-5. All citations to the Amended Complaint herein are to the second set of paragraphs 1-5 and the remaining numbered paragraphs.

Defendant's Community Standards include its Dangerous Individuals and Organizations (DIO) policy, which prohibits "organizations or individuals involved in the following: Terrorist activity, Organized hate, Mass or serial murder, Human trafficking, [or] Organized violence or criminal activity." (Am Compl. ¶ 9.) After banning Plaintiff and the others, Defendant released several public statements explaining that it "ban[s] individuals who promote or engage in violence and hate, regardless of ideology." (*Id.* at ¶ 6.) The statements included an explanation of what constitutes a violation of the DIO policy:

> … such factors include whether the person or organization has ever called for violence against individuals based on race, ethnicity, or national origin; whether the person has been identified with a hateful ideology; whether they use hate speech or slurs in their about section on their social media profiles; and whether they have had pages or groups removed from Facebook for violating hate speech rules.

(*Id.* at ¶ 8.)

Plaintiff alleges that she does not fall within any of the defined groups banned by the DIO policy. (*Id.* at ¶¶ 10-11.) Thus, Plaintiff alleges that Defendant defamed her when it banned her and publicly explained that she had been banned for violating the DIO policy.

When Plaintiff signed up to use the Facebook platform, she agreed to Defendant's Terms of Use and Privacy Policy (Terms). (Wong Decl. ¶ 6.) Plaintiff again agreed to Defendant's Terms when she created her public page. (*Id.* at ¶ 8.) By agreeing to these Terms, Plaintiff agreed to the following forum-selection clause:

> For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

(*Id.* at ¶ 12.) The Terms to which Plaintiff agreed also included Defendant's Community Standards and DIO policy.  (*Id.* at ¶¶ 6-11, 13-14.)

## II.    DISCUSSION

Defendant seeks to enforce the forum-selection clause contained in the Terms.  In the alternative, Defendant seeks to transfer based on a standard analysis under 28 U.S.C. § 1404(a). Plaintiff opposes the transfer arguing that the forum selection clause is both inapplicable and invalid and that Defendant has not made the necessary showing for a transfer under the requirements of § 1404(a).  However, as discussed below, Defendant's forum selection clause is both valid and applicable.[2]

### A.    Validity of the Forum-Selection Clause

Plaintiff argues that the forum-selection clause is invalid based solely on a 2017 decision from the Supreme Court of Canada, which determined that Defendant's forum-selection clause was unenforceable as an online consumer contract of adhesion.  Plaintiff, however, does not address United States law or the numerous district court cases that have found Defendant's forum-selection clause valid.

The United States Supreme Court has stated that "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59–60 (2013).  In *Atlantic Marine*, the Supreme Court stated that when a valid forum-selection clause exists, a plaintiff's choice of forum carries no weight and the court should not consider the parties' private interests, as it would under a traditional § 1404(a) analysis.  *Id.* at 63- 65.  In this circuit, "[f]orum-

---

[2] Because the forum selection clause controls, the Court need not, and will not, address the traditional analysis under § 1404(a).

selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Intern'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citation omitted). The *Krenkel* court further explained:

> A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy. In determining whether there was fraud or overreaching in a non-negotiated forum-selection clause, we look to whether the clause was reasonably communicated to the consumer. A useful two-part test of "reasonable communicativeness" takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms.

*Id.* (citation omitted). Plaintiff has not shown that Defendant's forum-selection clause is invalid. She has not shown fraud or overreaching, she has not shown that she would be deprived of her day in court or of a remedy, nor has she shown that enforcement of the clause would contravene public policy.

Instead of attacking the validity of the forum-selection clause, Plaintiff, relying on a case that did not involve a forum selection clause, argues that the entire contract between the parties is unenforceable and unconscionable. According to Plaintiff, the following is the applicable analysis:

> To determine whether a contract is procedurally unconscionable under Florida law, courts must look to: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010). Even if this is the applicable analysis, Plaintiff has provided no evidence that would establish that the contract between herself and Defendant is unconscionable. Plaintiff agreed to Defendant's Terms not once

4

but twice; the terms of the forum-selection clause are clear and written in plain English; and, while the Terms are presented on a take-it-or-leave-it basis, Plaintiff was under no obligation to enter into the agreement. Social media is not a requirement of life and there are other social media platforms available to Plaintiff. Thus, her argument that the entire agreement between the parties, including the forum-selection clause, is unconscionable fails.

Further, as cited in Defendant's motion, numerous district courts have found Defendant's Terms and the forum-selection clause valid. *See Thomas v. Facebook, Inc.*, No. 118CV00856LJOBAM, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (stating "[n]umerous courts have affirmed the validity and enforceability of Facebook's [Terms] and the forum selection clause contained therein" and collecting cases); *Franklin v. Facebook, Inc.*, No. 1:15-CV-00655-LMM, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015) (stating that the "Court cannot identify a single instance where any federal court has struck down Defendant's [Terms] as an impermissible contract of adhesion induced by fraud or overreaching or held the forum selection clause now at issue to be otherwise unenforceable due to public policy considerations" and collecting cases). Thus, the forum-selection clause is valid.

### B.   Applicability of the Forum-Selection Clause

Plaintiff argues that her claims do not fall under the express terms of the forum-selection clause. Plaintiff contends that this is a defamation case that has nothing to do with the deactivation of her accounts or with Defendant's products. In other words, Plaintiff maintains that her claims have nothing to do with her account and therefore the Terms have not been implicated by her claims. The Court finds this argument disingenuous.

The terms of the forum-selection clause are broad. The forum-selection clause applies to "any claim, cause of action, or dispute you have against us that arises out of or relates to these

5

Terms or the Facebook Products." Thus, Plaintiff's claims do not have to be about a breach of the parties' agreement; Plaintiff's claims merely have to "relate" to the Terms. Clearly, Plaintiff's claims relate to the Terms. Defendant made the public statements about Plaintiff and others to explain that it had deactivated their accounts because they had breached Defendant's DOI policy. Plaintiff's Amended Complaint recognizes that this is the reason for Defendant's public statements. The Amended Complaint alleges Defendant "explained their purported and false justification behind [Plaintiff's] ban." (Am. Compl. ¶ 6.) The Amended Complaint also relies on the DIO policy to explain why and how Defendant allegedly defamed her. *See* Am. Compl ¶¶ 7-10. Thus, contrary to Plaintiff's contentions, her claims arise out of or relate to the Terms. Thus, the forum-selection clause is applicable.

Accordingly, it is

ORDERED that:

1. Defendant Facebook, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [DE 24] is **GRANTED.**

2. The Clerk is directed to **TRANSFER** this action the United States District Court for the Northern District of California.

3. This case is **CLOSED.**

**DONE AND ORDERED** in Fort Lauderdale, Florida this 13th day of April, 2020.

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc: All counsel of record